**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| CREATIVE SNACKS, CO., LLC, a North Carolina limited liability company, | ) ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | |
| HELLO DELICIOUS BRANDS LLC, a Delaware limited liability company, PETER D. GRUMHAUS, and DOUGLAS M. WEISS, | ) ) ) ) | 1:17CV50 |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a Motion to Dismiss [Doc. #23] by

Defendants Hello Delicious Brands, LLC ("Hello Delicious"), Peter D. Grumhaus,

and Douglas M. Weiss (collectively "Defendants"). For the reasons explained

below, the Motion is GRANTED IN PART as to the allegation that Hello Delicious

breached the restrictive covenant in Section 2.5 of the Supply Agreement, the

allegations that supply chain information and distribution information are trade

secrets to the extent that those terms do not incorporate the other alleged trade

secrets, and the sixth claim for relief as a freestanding cause of action, but is

otherwise DENIED IN PART.

I.

The facts of this case, stated in the light most favorable to Plaintiff Creative

Snacks, Co., LLC ("Creative Snacks"), are as follows. Creative Snacks creates,

develops, manufactures, distributes, and sells snack products throughout the United States, Canada, Mexico, South Korea, Japan, China, and the Caribbean. (Compl. ¶ 16 [Doc. #1].)  In 2015, Creative Snacks developed its organic Toasted Coconut Clusters product (the "Coconut Clusters Product" or "Product") in cooperation with a Canadian company, Park's Bread 'n Buns Factory, Ltd. ("Park's Bread"). (Id. ¶ 18.)  In November of that year, Creative Snacks sent samples of the Coconut Clusters Product to Grumhaus, a manager and owner of Belmont Foods, LLC and an officer, director, and shareholder of Belmont Partners, Inc. which had served as a food broker for Creative Snacks since 2014 in connection with the sale to Costco Wholesale Corporation ("Costco") of Creative Snacks' Organic Coconut Chips under the Creative Snacks brand. (Id. ¶¶ 7, 8, 17, 19.)  Grumhaus was so enthusiastic about the Coconut Clusters Product that he and Weiss, also a manager and owner of Belmont Foods, LLC and an officer, director, and shareholder of Belmont Partners, Inc., met with Marius Andersen, President of Creative Snacks, at the Creative Snacks facility in Greensboro, North Carolina on November 24, 2015 to discuss the possibility of a partnership on the Coconut Clusters Product. (Id. ¶¶ 7, 8, 22, 24.)

At the start of the November 24, 2015 meeting, Andersen made clear that the information shared about the Coconut Clusters Product was highly confidential and required Grumhaus and Weiss each to execute a Confidentiality Agreement before any discussion, which they did. (Id. ¶ 25; Exs. A & B to Compl.)  The Confidentiality Agreement required Grumhaus and Weiss to keep business plans,

formulas, products, technologies, and processes developed by Creative Snacks

(referred to as "Confidential Information") secret and confidential and prohibited

them from disclosing the Confidential Information to anyone without Creative

Snacks' written permission. (<u>See</u> Confidentiality Agreement.)

Subject to those agreements, Andersen discussed the possibility of

developing closer working relationships between Creative Snacks and the Belmont

Companies, and Grumhaus and Weiss proposed a joint venture but it never came

to fruition. (Compl. ¶¶ 26, 27, 32.)  However, Andersen, Grumhaus, and Weiss

continued discussions about marketing the Coconut Clusters Product, including

potential customer conflicts and marketplace confusion if the Product were

marketed to retailers other than Costco. (<u>See id.</u> ¶¶ 29-31, 33-34.)

In May 2016, Creative Snacks entered into a Supply Agreement with Hello

Delicious, an affiliate of Belmont Foods, LLC and Belmont Partners, Inc. (<u>Id.</u> ¶¶ 6,

10, 39; Ex. C to Compl.)  Pursuant to the Supply Agreement, Creative Snacks

agreed to sell its Coconut Clusters Product to Hello Delicious during the term of the

Supply Agreement solely for the purpose of resale to Costco through its United

States retail stores. (Compl. ¶ 40.)  Creative Snacks does not have product rights

in the Product outside of the United States. (<u>Id.</u> ¶ 41.)  The Supply Agreement,

among other things, also restricted Hello Delicious's manufacture, sale, or

distribution of the Product (defined as "the coconut cluster snack food product

now manufactured, developed, produced, sold and distributed by" Creative

Snacks); prohibited Hello Delicious's use and disclosure of Confidential Information

3

(defined as "any and all trade secrets or other confidential or proprietary information . . . which derives economic value . . . from not being generally known without reverse engineering, decompiling, or disassembly to the public or to other persons who can obtain economic value from its disclosure or use"); and protected Creative Snacks' Product Rights (defined as "all proprietary, intellectual property, or other rights in . . . the Products . . ."). (See, e.g., Supply Agreement §§ 1.2, 1.6, 1.7, 2.5, 3.1, 4.1, 4.2, 4.3.)

More specifically, Creative Snacks alleges that its Confidential Information, "at least some of which constitutes trade secrets" and "virtually all of" which it provided to Defendants, includes:

a. the specific, detailed recipe for the Coconut Clusters Product;
b. the ingredient specifications for the Coconut Clusters Product;
c. ingredient origin related to the Coconut Clusters Product;
d. the cost breakdown as to the manufacture of the Coconut Clusters Product;
e. access to manufacturing and packaging facilities, methods of manufacture, and packaging of the Coconut Clusters Product;
f. ingredient costs, packaging costs, and other costs as to the Coconut Clusters Product;
g. detailed profit and profit margin information as to the Coconut Clusters Product;
h. lead times as to supply of the Coconut Clusters Product;
i. supply chain information;
j. distribution information; and,
k. pricing information concerning the sale by Creative Snacks of the Coconut Clusters Product under its brand to its customers[.]

(Compl. ¶¶ 50, 53.) Creative Snacks has taken reasonable efforts to maintain the secrecy and confidentiality of this information, including providing the information to a limited number of employees on a "need to know" basis, limiting access to

some information in computer files to certain personnel, maintaining the information mostly within its North Carolina facilities' secured office spaces, and requiring written confidentiality agreements when the need to share information arises, as it did with Grumhaus and Weiss and included in its Supply Agreement with Hello Delicious. (Id. ¶¶ 45, 51.)

Pursuant to the terms of the Supply Agreement, on October 5, 2016, Creative Snacks gave written notice to Hello Delicious of termination of the Supply Agreement, effective January 3, 2017. (Id. ¶ 55.)  On or about January 9, 2017, Hello Delicious "informed and represented to Costco that, going forward, Hello Delicious would continue to supply Costco with a coconut cluster type product identical or similar to the Coconut Clusters Product, but from a different facility and at a lower cost." (Id. ¶ 59.)  According to Creative Snacks, "upon information and belief," Hello Delicious has violated various sections of the Supply Agreement, including Section 2.5 by manufacturing a coconut cluster type product and selling or contracting to sell it to Costco and others, Section 4.1 by disclosing to others some or all of the Confidential Information and using the Confidential Information to develop or sell a competing coconut clusters type product, and Section 4.3 by copying, altering, or modifying the Coconut Clusters Product or having another do so on Defendants' behalf. (Id. ¶¶ 60-63; see also id. ¶¶ 66-74.)  In addition, "upon information and belief," Grumhaus and Weiss have used, disclosed, or otherwise misappropriated the Confidential Information in violation of the Confidentiality Agreements. (Id. ¶¶ 75, 76.)

5

Creative Snacks requested that Hello Delicious provide written assurances that it would comply with the terms of the Supply Agreement, to which Hello Delicious responded expressly refusing to provide such written assurances and stating that Section 2.5 of the Supply Agreement was unenforceable. (Id. ¶¶ 64, 65.)

On January 20, 2017, Creative Snacks filed the instant action alleging a breach of the Supply Agreement against Hello Delicious (Claim 1), breach of the Confidentiality Agreements against Grumhaus and Weiss (Claim 2), fraud against Hello Delicious and Grumhaus (Claim 3), misappropriation of trade secrets against all Defendants (Claim 4), and unfair competition and unfair and deceptive trade practices against all Defendants (Claim 5). (See generally Compl.)  Creative Snacks also styled its "Motion for Preliminary and Permanent Injunctive Relief" as its sixth claim for relief. (See id. ¶¶ 128-31.)  Defendants moved to dismiss each of these claims.

## II.

### A.

Defendants present a two-pronged attack of the breach of contract claims – (1) that the complaint fails to allege sufficient facts to support a breach and (2) that, even if the factual allegations were sufficient, the non-compete provision in the Supply Agreement is too broad to be enforceable. (See Defs.' Br. in Supp. of Mot. to Dismiss at 5-11 [Doc. #24].)  Because the enforceability of the non-

compete provision impacts the analysis of whether Creative Snacks has sufficiently alleged a breach of the agreements, it is addressed first.

In North Carolina, an enforceable covenant not to compete must, among other things, be reasonable as to terms, time, and territory. See, e.g., Triangle Leasing Co., Inc. v. McMahon, 393 S.E.2d 854, 857 (N.C. 1990). The party seeking enforcement of the covenant bears the burden of proving that it is reasonable. Hartman v. W.H. Odell & Assocs., Inc., 450 S.E.2d 912, 916 (N.C. Ct. App. 1994). A reasonable territorial restriction is no greater than necessary to protect the promisee's legitimate business interests. Id. at 917. "Ordinarily, a covenant's geographic scope will be found reasonable if it encompasses the area served by the business that the covenant protects, or, more specifically, if the protected business had clientele in the area covered by the covenant." Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC, 784 S.E.2d 457, 461 (N.C. 2016) (internal citation omitted).

Here, Section 2.5 of the Supply Agreement not only provides that "[d]uring the Term [of the Agreement], Buyer [Hello Delicious] shall not sell or distribute, directly or indirectly, any Products to anyone other than the Sole Customer [Costco]", but also that "during the Term of [the] Agreement and for a period of one year following the conclusion of the Term, Buyer and its Affiliates will not manufacture, sell or distribute a coconut cluster type product unless approved in writing by Supplier [Creative Snacks]." Hello Delicious contends that this latter covenant (also referred to as "the second sentence of Section 2.5") is

unenforceable because both the term "coconut cluster type product" and the territory are too broad. Because the Court agrees that the territory is overly broad, there is no need to evaluate whether the term "coconut cluster type product" is, as well.

Conspicuously absent from the second sentence of Section 2.5 of the Supply Agreement is any specific geographic region within which its prohibitions exist. Because there is no limitation, the geographic restriction is worldwide. Although the time period during which Hello Delicious would be restrained is only one year, see Hartman, 450 S.E.2d at 916 ("[i]n evaluating reasonableness, the time and territory restrictions must be read in tandem"), the worldwide geographic restriction is too broad for the restriction to be reasonable.

Worldwide geographic limitations are not per se unenforceable. See Static Control Components, Inc. v. Darkprint Imaging, Inc., 200 F. Supp. 2d 541, 547 (M.D.N.C. 2002) (citing Market Am., Inc. v. Christman-Orth, 520 S.E.2d 570, 578 (N.C. Ct. App. 1999)). The problem here is that, as alleged in the Complaint, Creative Snacks is itself limited to selling the Coconut Clusters Product to retailers in the United States, because it does not have the product rights outside of the United States. (See Compl. ¶¶ 36, 37 (referring to Creative Snacks' sales and distribution of the Coconut Clusters Product under its own brand and product name to grocery distributors, Sam's Club, and other retailers for resale "throughout the United States"), ¶ 41 ("Creative Snacks does not have product rights in the Coconut Clusters Product outside of the United States and its territories".).)

Instead, its co-developer of the Coconut Clusters Product, Park's Bread, "has such rights for the rest of the world outside of the United States and its territories." (Id. ¶ 41.) Creative Snacks does not have a legitimate business interest in protecting its sales of the Product worldwide. Accordingly, the Supply Agreement provides that Hello Delicious would purchase the Product from Creative Snacks "for resale solely and exclusively to Costco Wholesale Corporation's chain of retail stores located in the United States". (Supply Agreement at 1; see also id § 1.9 (defining "Sole Customer" as "Costco Wholesale Corporation for resale by it solely through its retail stores located in the United States of America").) Nothing in the Complaint suggests that a worldwide restraint on Hello Delicious is necessary to protect Creative Snacks' legitimate business interests in its rights in the Coconut Clusters Product.

Creative Snacks' strongest argument in response is its suggestion that the covenant "is likely not even properly characterized as a non-compete" but is, instead, more appropriately characterized as a non-disclosure provision. (See Pl.'s Br. in Opp'n to Mot. to Dismiss at 10-12 [Doc. #33].) When an agreement "seeks to prevent the disclosure or use of confidential information" and "does not seek to prevent a party from engaging in a similar business in competition with the promise," it is "not in restraint of trade." Chemimetals Processing, Inc. v. McEneny, 476 S.E.2d 374, 376 (N.C. Ct. App. 1996). Such an agreement "may, therefore, be upheld even though the agreement is unlimited as to time and area upon a showing that it protects a legitimate business interest of the promisee." Id.

at 377 (internal citation omitted).  This Court applied <u>Chemimetals</u> to a Confidentiality Agreement executed as a part of a business relationship in which the plaintiff used the defendant to manufacture custom chemical products and necessarily shared with the defendant its proprietary and confidential chemical formulas. <u>McElmurry v. Alex Fergusson, Inc.</u>, No. 1:04CV389, 2006 WL 572330, at *2 (M.D.N.C. Mar. 8, 2006).  According to the terms of the agreement, the defendant agreed to provide chemical compounds to the plaintiff for resale to its customers, the plaintiff agreed to furnish the defendant with certain formulations, and both parties agreed that the plaintiff was dependent on the defendant for an ongoing supply of the defendant's formulations. <u>Id.</u> at *3.  Both parties agreed that neither would use the other's formulas learned as a result of their business relationship to an unfair advantage or with the purpose of selling the same or similar products to the other's customers and that neither party would share the formulas with any third party. <u>Id.</u>  When the plaintiff sued the defendant for breach of the agreement, the defendant argued that the agreement was really an unenforceable non-compete agreement. <u>Id.</u> at *13.  The court disagreed.  It found that the agreement did not prohibit either party from competing with the other in the chemical manufacturing or marketing business. <u>Id.</u> at *15.  For example, the defendant could sell its own chemicals to another distributor in competition with the plaintiff. <u>Id.</u>  The agreement only precluded the parties from using each other's confidential formulas to manufacture and sell chemicals. <u>Id.</u>  Such is not the case here.

Applying the Chemimetal court's distinction between a restraint on competition and a non-disclosure agreement proves to be difficult. But, it is clear that the second sentence of Section 2.5 of the Supply Agreement is not merely a non-disclosure agreement, as other sections of the Supply Agreement surely are, but is, instead, a covenant not to compete. It prohibits Hello Delicious from manufacturing, selling, and distributing a coconut cluster type product. Even if the prohibition on manufacturing a coconut cluster type product could be deemed more akin to an agreement not to use Creative Snacks' confidential information to produce a product similar to the Coconut Clusters Product, Section 2.5 also precludes Hello Delicious from selling and distributing any coconut cluster type product even if it is manufactured by an entity other than Hello Delicious or one of its affiliates without the use of any confidential information Creative Snacks provided to Hello Delicious. In fact, according to the Complaint, Hello Delicious and its affiliates "primarily" engage in "the sale and/or distribution of various food and snack products manufactured by others." (Compl. ¶ 12.) The second sentence of Section 2.5 restrains Hello Delicious's primary business – the sale and distribution of food and snack products manufactured by others.

Because the covenant in Section 2.5 is more appropriately characterized as a covenant not to compete rather than a non-disclosure agreement, its time and territory restrictions must be reasonably related to the protection of Creative Snacks' legitimate business interests, and, as explained above, the territorial restriction is not. Therefore, Section 2.5's covenant not to compete is

11

unenforceable; however, because Creative Snacks alleges that Hello Delicious also violated other provisions of the Supply Agreement, Hello Delicious's other challenge to the contract claim against it – a failure to allege sufficient facts of a breach – is addressed next, along with Grumhaus's and Weiss's similar challenge.

B.

Defendants argue that Creative Snacks has failed to state a claim for both breach of the Supply Agreement and breach of the Confidentiality Agreements because Creative Snacks' allegations are conclusory recitations of the elements of a breach and that, to the extent Creative Snacks has "buttress[ed] its claims on a bare allegation" that Hello Delicious would continue to supply Costco a coconut cluster type product, Creative Snacks has failed to allege any facts to support its belief that such activity is actually occurring. (Defs.' Br. in Supp. of Mot. to Dismiss at 6-8.)  Defendants contend that in eleven consecutive paragraphs, Creative Snacks alleges that "upon information and belief" Defendants violated the agreements but fails to provide any underlying facts to support that conclusion. (Id. at 7-8.)

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing

12

Twombly, 550 U.S. at 556); see also McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015) (noting that a complaint must "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face in the sense that the complaint's factual allegations must allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). When evaluating whether the complaint states a claim that is plausible on its face, the facts are construed in the light most favorable to the plaintiff and all reasonable inferences are drawn in its favor. U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 136 (4th Cir. 2014). Nevertheless, "labels and conclusions[,]" "a formulaic recitation of the elements of a cause of action[,]" and "naked assertions . . . without some further factual enhancement" are insufficient. Twombly, 550 U.S. at 557.

The elements of a breach of contract claim are (1) the existence of a valid contract and (2) a breach of its terms, Poor v. Hill, 530 S.E.2d 838, 843 (N.C. Ct. App. 2000), only the latter of which is at issue. Here, Creative Snacks has alleged that Hello Delicious agreed not to engage in any sales of the Product except as expressly authorized in the Supply Agreement, to maintain as confidential and not to disclose or use for any purpose other than as expressly permitted any Confidential Information it acquired or learned from Creative Snacks, to respect Creative Snacks' exclusive ownership of the Product Rights, and not to copy, alter, modify, disassemble, reverse engineer or decompile the Product or the Confidential Information. (Compl. ¶ 44 (citing Supply Agreement § 3.1), ¶ 45 (citing Supply

Agreement § 4.1), ¶ 47 (citing Supply Agreement § 4.2), ¶ 49 (citing Supply Agreement § 4.3); see also id. ¶ 56 (alleging that §§ 3.1, 4.1, 4.2, and 4.3 survive the termination of the Supply Agreement).)

Creative Snacks alleges that, despite having made these promises, after the termination of the Supply Agreement effective January 3, 2017, Hello Delicious "informed and represented to Costco [on or about January 9, 2017] that, going forward [it] would continue to supply Costco with a coconut cluster type product identical or similar to the Coconut Clusters Product, but from a different facility and at a lower cost." (Id. ¶ 59.) In so doing, upon Creative Snacks' information and belief, Hello Delicious violated Sections 4.1 and 4.3 of the Supply Agreement by copying, altering, or modifying the Product or having another do so on Defendants' behalf and by disclosing to another food manufacturer acting as Defendants' co-packer some or all of the Confidential Information, and using the Confidential Information to develop or sell a competing coconut clusters type product. (Id. ¶¶ 60, 62; see also id. ¶ 81.) In addition, Grumhaus and Weiss, alleged to be managers and owners of Belmont Foods, LLC which allegedly manages Hello Delicious, breached the terms of their Confidentiality Agreements by using or disclosing Confidential Information. (Id. ¶¶ 75, 87, 88.)

Defendants argue that "[f]or a breach to occur, Plaintiff must allege that Hello Delicious actually proceeded to manufacture, sell, or distribute the Product to Costco or some other entity – not that it merely proposed to do so." (Defs.' Br. in Supp. of Mot. to Dismiss at 7.) Not only does this argument focus on the

14

restrictive covenant in Section 2.5 of the Supply Agreement, now determined to be unenforceable, but the Court interprets Creative Snacks' breach allegation differently. A reasonable inference from the allegation that Hello Delicious would continue supplying Costco with a <u>similar or identical Coconut Clusters Product</u> <u>at a lower cost</u> <u>from a different facility</u> is that Defendants had already breached and were continuing to breach at least their promises not to disclose or use Confidential Information.

While Creative Snacks has asserted many of its allegations of breach "upon information and belief", it has also alleged the Confidential Information that the agreements protect, the statements made by Hello Delicious to Costco after the termination of the Supply Agreement, and, by reasonable inference, the provisions of the agreements that Defendants had to have violated in order for Hello Delicious to make its representations to Costco after the termination of the Supply Agreement. At this stage, these factual allegations are sufficient to state a claim against Hello Delicious for breach of the Supply Agreement and against Grumhaus and Weiss for breach of the Confidentiality Agreements. <u>See</u> <u>Kotane, Inc. v. Banish</u>, No. 5:10-cv-90, 2011 WL 3804181, at *1-3 (W.D.N.C. Aug. 29, 2011) (finding that the plaintiff sufficiently alleged facts of a breach of a non-disclosure agreement even though some of the allegations were made "upon information and belief" of the plaintiff).

Therefore, Hello Delicious's motion to dismiss the breach of Supply Agreement claim against it is granted in part as to Section 2.5's covenant not to

compete, but is denied in part as to the remainder of the claim that Hello Delicious breached the Supply Agreement. Grumhaus's and Weiss's motion to dismiss the breach of Confidentiality Agreements claim against them is denied.

III.

In addition to alleging contract claims, Creative Snacks has alleged that Hello Delicious and Grumhaus fraudulently induced it to agree to Section 2.5 of the Supply Agreement and ultimately to enter into the Supply Agreement with Hello Delicious. Hello Delicious and Grumhaus challenge the sufficiency of the fraud allegations, arguing that they are general and conclusory, made "upon information and belief", and lack any information on the "how, when, and in what manner" the fraud was committed and any facts of Hello Delicious's and Grumhaus's specific intent not to perform at the time they made their promises. (Defs.' Br. in Supp. of Mot. to Dismiss at 11-15.)

In North Carolina, "[t]he essential elements of fraud [in the inducement] are: (1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with the intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." TradeWinds Airlines, Inc. v. C-S Aviation Servs., 733 S.E.2d 162, 168 (N.C. Ct. App. 2012) (alteration in original). Stated another way, in order for a defendant's failure to carry out its contractual promise to constitute fraudulent inducement of the contract, the defendant's promise "must have been made (1) with the present intent not to carry it out and (2) with the purpose to induce the plaintiff to [carry out its promises

16

while the defendant did not intend to fulfill its promises]." Hoyle v. Bagby, 117 S.E.2d 760, 762 (N.C. 1961) cited in Strum v. Exxon Co., U.S.A., 15 F.3d 327, 331 (4th Cir. 1994). Because fraud in the inducement is subject to the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure, which requires a party alleging fraud to "state with particularity the circumstances constituting fraud", a plaintiff's generalities and conclusory allegations that a defendant never intended to honor its contractual obligations are insufficient. See Strum, 15 F.3d at 331.

Hello Delicious and Grumhaus contend that Creative Snacks' fraud allegations are no different than those made in Norman v. TradeWinds Airlines, Inc., 286 F. Supp. 2d 575 (M.D.N.C. 2003), adopted (Osteen, J. Aug. 21, 2003). In Norman, the plaintiff former employee alleged that the defendant former employer never intended to comply with the employee handbook, but the court found that the plaintiff "failed to allege with requisite particularity that TradeWinds never intended to follow, or knew that it would not follow, the outlined policies in the Handbook." Id. at 595. The plaintiff had alleged that TradeWinds "never intended to comply with the [handbook] as evidenced by their reckless procedure in the termination of [the plaintiff,] . . . its reckless disregard of the promises in the handbook." Id. As the court explained, "in order to be liable for fraud, the promisor must do something more than just disregard or break its promises." Id.

Here, unlike the plaintiff in Norman, Creative Snacks has alleged that Hello Delicious and Grumhaus did more than just breach their agreements. Grumhaus

17

was initially so interested in the Coconut Clusters Product samples that he "suggested that Creative Snacks act as a co-packer for the Belmont Companies by manufacturing and selling the product to [them] for resale under a private label [they] owned." (Compl. ¶¶ 19, 20.) After Creative Snacks rejected this idea, Grumhaus "suggested to Andersen that he fly to Greensboro to visit Creative Snacks at its facility to discuss a possible partnership opportunity with Creative Snacks as to the Coconut Clusters Product." (Id. ¶¶ 21, 22.) Grumhaus and Weiss came to Greensboro to meet with Andersen who was interested in developing a closer working relationship between the companies. (Id. ¶¶ 24, 26.) "Grumhaus and Weiss pitched to Andersen an opportunity to enter into a joint venture dedicated to selling the Coconut Clusters Product." (Id. ¶ 26) As the joint venture failed to develop, Grumhaus and Weiss continued their efforts to establish a marketing and distribution relationship with Creative Snacks. (See id. ¶¶ 27-35.)

Grumhaus was "primarily responsible for negotiating the Supply Agreement with Creative Snacks on behalf of Hello Delicious" and "executed the Supply Agreement on [its] behalf." (Compl. ¶ 93.) "To induce Creative Snacks to enter into the Supply Agreement and to provide Hello Delicious with the benefits afforded thereunder", including access to Confidential Information, Hello Delicious and Grumhaus "made and agreed to the promises set forth in Section 2.5, 3.1, 4.1, 4.2, and 4.3 of the Supply Agreement" having, at the time they made those promises, no intent of performing those promises. (Id. ¶¶ 94, 95.)

18

As factual support, Creative Snacks then provides alleged details of the negotiations of Section 2.5. Creative Snacks had initially proposed Section 2.5 read as follows:

> <u>Sales by Buyer; Restrictions</u>. During the Term, Buyer shall not sell or distribute, directly or indirectly, any Products to anyone other than the Sole Customer. Additionally, Buyer covenants and agrees that, except for Buyer's resale of Products to the Sole Customer during the Term consistent with the terms of this Agreement, neither Buyer nor any of its Affiliates shall, during the Term and for a period of one (1) year immediately following the conclusion of the Term, manufacture, sell or distribute **within the United States** any Products or any **coconut-based products** which are directly competitive with the Products. Buyer acknowledges that but for Buyer's covenants contained in this Section 2.4 [eventual Section 2.5], Supplier would not have entered into this Agreement.

(<u>Id.</u> ¶ 96 (emphasis added).)

Hello Delicious and Grumhaus responded with the following proposal:

> <u>Sales by Buyer; Restrictions</u>. During the Term, Buyer shall not sell or distribute, directly or indirectly, any Products to anyone other than the Sole Customer. Buyer acknowledges that but for Buyer's covenants contained in this Section 2.4 [eventual Section 2.5], Supplier would not have entered into this Agreement.

(<u>Id.</u> ¶ 97.) Creative Snacks objected to the wholesale removal of the post-termination obligations. (<u>Id.</u>) Hello Delicious and Grumhaus then proposed:

> <u>Sales by Buyer; Restrictions</u>. During the Term, Buyer shall not sell or distribute, directly or indirectly, any Products to anyone other than the Sole Customer. Buyer agrees that during the term of this Agreement and for a period of one year following the conclusion of the [sic] they will not manufacture **a coconut cluster type product** unless approved by Seller. Buyer acknowledges that but for Buyer's covenants contained in this Section 2.4 [eventual Section 2.5], Supplier would not have entered into this Agreement.

(Id. ¶ 98 (emphasis added).)  While this proposal included a post-termination

obligation, it did not incorporate the geographic restriction of the United States

that Creative Snacks initially proposed and, instead, included no territorial

restriction.  In addition, instead of incorporating the term "coconut-based products"

as proposed by Creative Snacks, Hello Delicious's and Grumhaus's proposal used

an entirely new phrase, "a coconut cluster type product".  As Creative Snacks

alleges, these proposals "formed the foundation of the final language set forth in

Section 2.5 of the Supply Agreement", (id. ¶ 100), which reads:

> Sales by Buyer; Restrictions.  During the Term, Buyer shall not sell or
> distribute, directly or indirectly, any Products to anyone other than the
> Sole Customer.  Buyer agrees that during the Term of this Agreement
> and for a period of one year following the conclusion of the Term,
> Buyer and its Affiliates will not manufacture, sell or distribute a
> coconut cluster type product unless approved in writing by Supplier.
> Buyer acknowledges that but for Buyer's covenants contained in this
> Section 2.5, Supplier would not have entered into this Agreement.

After Creative Snacks learned of Hello Delicious's January 9, 2017

communication with Costco, it requested written assurances from Hello Delicious

that it would comply with the terms of the Supply Agreement. (Id. ¶ 64.)  In

response, Hello Delicious stated that Section 2.5 of the Supply Agreement was

unenforceable, (id. ¶¶ 65, 101), an argument that it successfully made in its

motion to dismiss.

Creative Snacks' detailed allegations of the negotiation of Section 2.5 of the

Supply Agreement, the specific section of the agreement that Hello Delicious

challenges in its Motion to Dismiss as unenforceable, make plausible its allegation

that Hello Delicious and Grumhaus "proposed . . . Section 2.5 language in an attempt . . . to render Section 2.5 of the Supply Agreement unenforceable, because they had no intention of having Hello Delicious (or its Affiliates) abide by such provision or any other post-termination obligations in the event of termination of the Supply Agreement." (Id. ¶ 102.) The fact that Creative Snacks, and not Hello Delicious, terminated the Supply Agreement does not "negate the inference of fraudulent inducement" as Defendants argue. (See Defs.' Br. in Supp. of Mot. to Dismiss at 14.) Hello Delicious and Grumhaus allegedly made the promises in Section 2.5 with the intent to deceive Creative Snacks and induce it to enter the Supply Agreement and provide Hello Delicious with benefits including the receipt of Confidential Information. (Compl. ¶ 104.) Creative Snacks allegedly was in fact deceived and reasonably relied on Hello Delicious's and Grumhaus's representations. (Id. ¶¶ 105-07.) Creative Snacks has plausibly alleged that Hello Delicious and Grumhaus committed fraud, and, therefore, their motion to dismiss this claim is denied.

IV.

Defendants next challenge Creative Snacks' misappropriation of trade secrets claim, arguing that Creative Snacks has failed to identify its trade secrets with sufficient particularity or to allege specific acts of misappropriation. (Defs.' Br. in Supp. of Mot. to Dismiss at 15.) The elements of an action for misappropriation of trade secrets are (1) the defendant "[k]nows or should have known of the trade secret" and (2) the defendant "[h]as had a specific opportunity to acquire it for

disclosure or use or has acquired, disclosed, or used it without the express or implied consent or authority of the owner." N.C. Gen. Stat. § 66-155.

A trade secret is defined as

Business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:

a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and

b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.C. Gen. Stat. § 66-152. "Misappropriation" is the "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret." Id.

Here, Creative Snacks has alleged that "[i]n connection with the development of the Coconut Clusters Product (called the 'Products' in the Supply Agreement because there are variations of the product), Creative Snacks created and amassed valuable confidential business information, at least some of which constitutes trade secrets". (Compl. ¶ 50.) "Creative Snacks took reasonable steps to protect against [the] disclosure" of this information that "was not generally known or readily ascertainable" and "gave Creative Snacks a significant business advantage over and against its competitors." (Id.)

22

This confidential information includes:

    a. the specific, detailed recipe for the Coconut Clusters Product;
    b. the ingredient specifications for the Coconut Clusters Product;
    c. ingredient origin related to the Coconut Clusters Product;
    d. the cost breakdown as to the manufacture of the Coconut Clusters Product;
    e. access to manufacturing and packaging facilities, methods of manufacture, and packaging of the Coconut Clusters Product;
    f. ingredient costs, packaging costs, and other costs as to the Coconut Clusters Product;
    g. detailed profit and profit margin information as to the Coconut Clusters Product;
    h. lead times as to supply of the Coconut Clusters Product;
    i. supply chain information;
    j. distribution information; and
    k. pricing information concerning the sale by Creative Snacks of the Coconut Clusters Product under its brand to its customers[.]

(Id.)  Creative Snacks refers to this information collectively as "CS Trade

Secrets and Confidential Information". (Id.)

    Prior to the termination of the Supply Agreement,

    Creative Snacks provided to [D]efendants virtually all of the CS Trade Secrets and Confidential Information, namely, the specific detailed recipe for the Coconut Clusters Product, the ingredient specifications for the Coconut Clusters Product, ingredient origin related to the Coconut Clusters Product, the cost breakdown as to manufacture of the Coconut Clusters Product, access to the manufacturing and packaging facilities, methods of manufacture and packaging of the Coconut Clusters Product, ingredient costs, packaging costs, and other costs as to the Coconut Clusters Product, detailed profit and profit margin information as to the Coconut Clusters Product, lead times as to the supply of the Coconut Clusters Product, supply chain information, distribution information, and pricing information concerning the sale by Creative Snacks of the Coconut Clusters Product sold by Creative Snacks under its brand to its customers.

(Id. at 53.)  Defendants argue that this is a "list of broad and, in large part, vague

categories of information" and that Creative Snacks fails "to demarcate its alleged

trade secrets from information it considers confidential". (Defs.' Br. in Supp. of Mot. to Dismiss at 17.)

Depending on the context of the business and the allegations, there are cases finding as sufficient and other cases finding as too broad allegations that trade secrets include product information, operating policies, pricing information, costs, and confidential information. Compare, e.g., Jacobs Vehicle Sys., Inc., No. 1:12CV181, 2013 WL 4833058, at *9 (M.D.N.C. Sept. 10, 2013) (finding "business or technical information", "customer specifications, formulas, patterns, programs, devices, compilations of information, methods or techniques, as well as information embodied in documentation relating to the invention, design, manufacture, formulation, research, development, or production of engine retarding systems, valve actuation systems, and/or engine brakes . . . for sale by JVS" to be general allegations that did not notify the defendant of what the plaintiff alleged to be a misappropriated trade secret) with Philips Elecs. N. Am. Corp. v. Hope, 631 F. Supp. 2d 705, 721-22 (M.D.N.C. 2009) (finding that the plaintiff forecast evidence of the existence of trade secrets when it alleged its trade secrets to be a particular business plan, customer preferences, a profitability calculator, new packaging plans, product costs, customer pricing information, and market share data).

Although Defendants base their challenge on North Carolina's "sufficient particularity" standard for pleading claims of misappropriation of trade secrets, (see Defs.' Br. in Supp. of Mot. to Dismiss at 15-19 (citing Washburn v. Yadkin Valley

Bank & Trust Co., 660 S.E.2d 577 (N.C. Ct. App. 2008); VisionAIR, Inc. v. James, 606 S.E.2d 359 (N.C. Ct. App. 2004))), they have cited no law, and the Court is aware of none, in support of applying North Carolina's pleading requirement to the instant action. Defendants in Great Northern Insurance Co. v. Recall Total Information Management, Inc., No. TDC-13-1829, 2014 WL 3845891, at *4 (D. Md. Aug. 1, 2014), made a similar argument as Defendants do here. They argued that "under Maryland law, gross negligence must be pled with specificity", but the court explained that "federal courts sitting in diversity must apply . . . federal procedural law." Id. (citing Hanna v. Plumer, 380 U.S. 460, 471-42 (1965)). Although gross negligence was a matter of state law, federal pleading standards applied. Id. "Because there is no heightened pleading standard for gross negligence under federal procedural law," the Court applied the notice pleading standard in Federal Rule of Civil Procedure 8. Id. Similarly, here, because there is no heightened pleading standard for misappropriation of trade secrets under federal procedural law, Rule 8's notice pleading standard, as interpreted by Iqbal and Twombly, applies.

Creative Snacks has sufficiently pled facts to set out a plausible claim of misappropriation of trade secrets. It has alleged that it provided Defendants with information specific to the Coconut Clusters Product. This includes the Product's specific detailed recipe, the Product's ingredient specifications, origins, and costs, the Product's packaging costs, the Product's manufacturing cost breakdown, manufacturing and packaging methods for the Product, access to the Product's

manufacturing and packaging facilities, the Product's supply lead times, detailed Product profit and profit margin information, and pricing information related to Creative Snacks' sale of the Product under its own brand to its customers. (See Compl. ¶¶ 50, 53.)  This information is alleged to be both trade secrets and confidential, which Defendants contend is problematic, but if it were not also confidential, it likely would not be a trade secret. See N.C. Gen. Stat. § 66-152.

In addition, to the extent that Creative Snacks' allegations of "supply chain information" and "distribution information" incorporate its other alleged ingredient, manufacturing, cost, profit, supply lead time, and pricing trade secrets, these allegations are also sufficient.  To the extent that those terms do not incorporate Creative Snacks' other alleged trade secrets, they are not.

In addition to challenging the sufficiency of Creative Snacks' trade secrets allegations, Defendants argue that Creative Snacks failed to allege sufficiently how the trade secrets were misappropriated. (See Defs.' Br. in Supp. of Mot. to Dismiss at 18-19.)  First, Defendants once again take issue with Creative Snacks' use of "upon information and belief" in its allegations such as "[u]pon information and belief, Defendants have tortiously and without authorization used, disclosed, and/or otherwise misappropriated the CS Trade Secrets and Confidential Information for their own benefit and to the detriment of Creative Snacks." (Compl. ¶ 117; see also ¶¶ 66-76.)  Next, Defendants argue that "[s]ignificantly, Plaintiff has not alleged any concrete facts indicating that Defendants have developed a snack food item similar to the Product – much less that they used

Plaintiff's confidential information to do so." (Defs.' Br. in Supp. of Mot. to Dismiss at 19 (citing Compl. ¶¶ 66-76); see also id. (citing ¶ 118).)

After alleging the trade secrets provided to Defendants, which included the Product's recipe, ingredient specifications, manufacturing, ingredient, and packing costs, supply lead times, and profit margin, and access to the Product's manufacturing and packaging facilities, (see, e.g., Compl. ¶ 53), Creative Snacks specifically alleges that Hello Delicious informed Costco within one week of the effective termination of the Supply Agreement that it would continue to supply "a coconut cluster type product identical or similar to the Coconut Clusters Product, but from a different facility and at a lower cost", (id. ¶ 59). Furthermore, Creative Snacks alleges that without Defendants' knowledge of Creative Snacks' trade secrets, they would not have been able to make this representation to Costco. (See id. ¶ 118.) At this stage, Creative Snacks has sufficiently alleged that Defendants misappropriated its trade secrets. Cf. Byrd's Lawn & Landscaping, Inc. v. Smith, 542 S.E.2d 689, 693 (N.C. Ct. App. 2001) (recognizing that misappropriation of trade secrets can be proven by circumstantial evidence). Therefore, Defendants' motion to dismiss this claim is granted in part to the extent that the terms "supply chain information" and "distribution information" do not incorporate the other alleged trade secrets, but denied in part as to the remainder of the allegations.

V.

Defendants next argue that the unfair and deceptive trade practices claim should be dismissed because Creative Snacks bases this claim on the same alleged conduct – breach of contract, fraud, and misappropriation of trade secrets – as discussed above. (Defs.' Br. in Supp. of Mot. to Dismiss at 19; see Compl. ¶¶ 122-123.) The elements of a claim for unfair and deceptive trade practices are (1) the commission of an unfair or deceptive act or practice (2) in or affecting commerce (3) that proximately caused the injury to the plaintiff. Dalton v. Camp, 548 S.E.2d 704, 711 (N.C. 2001). "Proof of fraud would necessarily constitute a violation of the prohibition against unfair and deceptive acts", Bhatti v. Buckland, 400 S.E.2d 440, 442 (N.C. 1991), and Creative Snacks has sufficiently alleged fraud against Hello Delicious and Grumhaus. Misappropriation of trade secrets may also constitute unfair and deceptive trade practices, GE Betz, Inc. v. Conrad, 752 S.E.2d 634, 650 (N.C. Ct. App. 2013) (citing Drouillard v. Keister Williams Newspaper Servs., Inc., 423 S.E.2d 324, 326 (N.C. Ct. App. 1992)), and Creative Snacks has sufficiently alleged misappropriation of trade secrets against all Defendants. Therefore, Creative Snacks has sufficiently alleged unfair and deceptive trade practices against Defendants, and their motion to dismiss this claim is denied.

VI.

Creative Snacks concedes that Defendants correctly challenge the sixth claim for relief entitled "Motion for Preliminary and Permanent Injunctive Relief" as

one not recognized as "a freestanding cause of action". (Defs.' Br. in Supp. of Mot. to Dismiss at 20; Pl.'s Br. in Opp'n to Mot. to Dismiss at 19-20.)  Creative Snacks asks the Court to treat the request as part of its fifth prayer for relief seeking an injunction, and it has separately filed a motion for preliminary injunction [Doc. #6] for which a hearing is scheduled.  Therefore, Defendants' motion to dismiss the sixth claim for relief is granted to the extent that the claim is not recognized as a freestanding cause of action, but this ruling does not affect the availability of this relief, which will be addressed as part of the separately filed motion for preliminary injunction.

VII.

For the reasons stated herein, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss be GRANTED IN PART AND DENIED IN PART.  It is granted in part as to the allegation that Hello Delicious breached the restrictive covenant in Section 2.5 of the Supply Agreement, the allegations that supply chain information and distribution information are trade secrets to the extent that those terms do not incorporate the other alleged trade secrets, and the sixth claim for relief as a freestanding cause of action.  It is otherwise denied.

This the 12th day of September, 2017.


/s/ N. Carlton Tilley, Jr.
Senior United States District Judge