**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| CREATIVE SNACKS, CO., LLC, a North Carolina limited liability company, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| HELLO DELICIOUS BRANDS LLC, a Delaware limited liability company, PETER D. GRUMHAUS, and DOUGLAS M. WEISS, | ) ) ) ) ) | 1:17CV50 |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Creative Snacks, Co., LLC's Motion for Preliminary Injunction [Doc. #6]. Creative Snacks, Co., LLC ("Creative Snacks") alleges that Defendant Hello Delicious Brands LLC ("Hello Delicious") violated the Supply Agreement[1] between it and Creative Snacks and that Defendants Peter D. Grumhaus and Douglas M. Weiss violated the Confidentiality Agreements they executed and, in so doing, all Defendants misappropriated trade secrets and committed unfair and deceptive trade practices. (See Compl. [Doc. #1].) Hello Delicious and Grumhaus are also alleged to have committed fraud. (Id.)

---

[1] Specific allegations that Hello Delicious breached the restrictive covenant in the second sentence of Section 2.5 of the Supply Agreement, as well as allegations that supply chain information and distribution information are trade secrets to the extent that those terms do not incorporate the other alleged trade secrets, were dismissed upon Defendants' motion. (See Mem. Op. & Order (Sept. 12, 2017) [Doc. #44].)

Creative Snacks moves to enjoin Hello Delicious and its affiliates from violating the Supply Agreement and to enjoin Grumhaus and Weiss from violating the Confidentiality Agreements. (See Mot. for Prelim. Inj.; Pl.'s Br. in Supp. of Mot. for Prelim. Inj. [Doc. #7].)  After the parties briefed the matter, a hearing was held on September 26, 2017.  Defendants were permitted to submit further briefing on the issue of reverse engineering, after which Creative Snacks moved to do the same [Doc. #53], which request is hereby granted, and filed its own supplemental brief on the topic.  For the reasons stated below, Creative Snacks's Motion for Preliminary Injunction is granted in part and denied in part.

I.[2]

Creative Snacks, founded by Marius Andersen, creates, develops, manufactures, distributes, and sells snack products throughout the United States, Canada, Mexico, South Korea, Japan, China, and the Caribbean. (Marius Andersen Aff. ¶ 3 (Feb. 1, 2017) [Doc. #7-2].)  Hello Delicious, co-founded by Grumhaus, is a food and snack innovation company that manufactures, sells, and distributes various food and snack products to major vendors like Costco Wholesale Corporation ("Costco"). (Tr. 7:3-5 [Doc. #47]; Peter D. Grumhaus Decl. ¶ 4 (Mar. 2, 2017) [Doc. #16].)  Belmont Foods, LLC ("Belmont Foods") is a holding company that owns and manages Hello Delicious. (Grumhaus Decl. ¶ 6.)  It was

_____

[2] Some of the information discussed in this Opinion is the subject of pending motions to seal.  Care has been taken to disclose only the information necessary to the Court's decision.

founded by Weiss, and Grumhaus became a member several years later. (Id. ¶ 6.) Belmont Partners, Inc. ("Belmont Partners") is a food and beverage broker and is Hello Delicious's food broker for Costco. (Id. ¶¶ 5, 7.) It was also founded by Weiss, and, although Grumhaus has no official role with the company, he has served as a conduit between it and Creative Snacks. (Id. ¶ 5.)

In 2015, Creative Snacks developed its organic Toasted Coconut Clusters product (the "Product") in cooperation with a Canadian company, Park's Bread 'n Buns Factory, Ltd. ("Park's Bread"). (Andersen Aff. ¶ 13.) In November of that year, Creative Snacks sent samples of the Product to Belmont Partners to discuss having the company develop sales presentations to Costco. (Id. ¶ 14 (averring that samples were sent to Peter Grumhaus); see Grumhaus Decl. ¶ 16; Tr. 7:11-20.) Belmont Partners had served as a food broker for Creative Snacks since 2014 in connection with the sale to Costco of Creative Snacks's Organic Coconut Chips under the Creative Snacks brand. (Andersen Aff. ¶ 12; Grumhaus Decl. ¶ 13.)

Because Grumhaus and Weiss liked the Product, they traveled to Greensboro, North Carolina on November 24, 2015, to discuss a possible working relationship with Creative Snacks on the Product. (Andersen Aff. ¶¶ 17, 18; Grumhaus Decl. ¶ 16; Tr. 8:11-15, 9:1-3.) Grumhaus and Weiss each executed a Confidentiality Agreement prior to touring Creative Snacks's packaging facility and before holding any discussions with representatives of Creative Snacks. (Andersen Aff. ¶ 19; Grumhaus Decl. ¶ 17; see also Confidentiality Agreements, e.g., Exs. 2 & 3 to Mot. for Prelim. Inj. [Docs. #7-3, 7-4].) The Confidentiality Agreement

required Grumhaus and Weiss to keep business plans, formulas, products, technologies, and processes developed by Creative Snacks (referred to as "Confidential Information") secret and confidential and prohibited them from disclosing the Confidential Information to anyone without Creative Snacks's written permission. (See Confidentiality Agreement.)  Subject to those agreements, Andersen discussed the possibility of developing closer working relationships between Creative Snacks and the Belmont Companies, even possibly a joint venture. (Andersen Aff. ¶ 20; Grumhaus Decl. ¶ 18.)

Over the course of the following months, the parties moved towards finalizing their working relationship. (See, e.g., Grumhaus Decl. ¶¶ 19-36.)  During the parties' communications, Creative Snacks provided to Grumhaus the country of origin for the Product's ingredients, (Emails among Lindsay Hancock, Marius Andersen, and Peter Grumhaus (Apr. 18-19, 2016) (e.g., Prelim. Inj. Ex. 3) [Doc. #20-3]; Tr. 57:22-58:10), the component percentage breakdown for the Product, (Emails between Peter Grumhaus and Lindsay Hancock (May 5-6, 2016) (e.g., Prelim. Inj. Ex. 4) [Doc. #20-2]), and the profit sharing model which included the cost of ingredients, inbound freight, bags, and overhead (Tr. 28:18-24, 32:20-23, 33:4-12, 70:13-23, 75:2-12; Ex. A to Supply Agreement (e.g., Prelim. Inj. Ex. 5 [Doc. #20-4])).

On May 16, 2016, Creative Snacks, as Supplier, and Hello Delicious, as Buyer, entered into a Supply Agreement. (Andersen Aff. ¶ 31; Grumhaus Decl. ¶ 41; see also Supply Agreement (e.g., Ex. 5 to Mot. for Prelim. Inj.) [Doc. #7-6].)

4

Pursuant to the Supply Agreement, Creative Snacks agreed to sell its Toasted Coconut Clusters Product to Hello Delicious during the term of the Supply Agreement solely for the purpose of resale to Costco through its United States retail stores. (Andersen Aff. ¶ 32; Grumhaus Decl. ¶ 42.)  The Supply Agreement, among other things, also restricted during the term of the Supply Agreement Hello Delicious's manufacture, sale, or distribution of the Product (defined as "the coconut cluster snack food product now manufactured, developed, produced, sold and distributed by" Creative Snacks); prohibited Hello Delicious's use and disclosure of Confidential Information (defined as "any and all trade secrets or other confidential or proprietary information . . . which derives economic value . . . from not being generally known without reverse engineering, decompiling, or disassembly to the public or to other persons who can obtain economic value from its disclosure or use"); and protected Creative Snacks's Product Rights (defined as "all proprietary, intellectual property, or other rights in . . . the Products . . ."). (See, e.g., Supply Agreement §§ 1.2, 1.6, 1.7, 2.5, 3.1, 4.1, 4.2, 4.3.)

According to Creative Snacks, its Confidential Information, at least some of which it believes constitutes trade secrets, includes:

    a. the specific, detailed recipe for the Coconut Clusters Product;
    b. the ingredient specifications for the Coconut Clusters Product;
    c. ingredient origin related to the Coconut Clusters Product;
    d. the cost breakdown as to the manufacture of the Coconut Clusters Product;
    e. access to manufacturing and packaging facilities, methods of manufacture, and packaging of the Coconut Clusters Product;
    f. ingredient costs, packaging costs, and other costs as to the Coconut Clusters Product;

g. detailed profit and profit margin information as to the Coconut Clusters Product;
h. lead times as to supply of the Coconut Clusters Product;
i. supply chain information;
j. distribution information; and,
k. pricing information concerning the sale by Creative Snacks of the Coconut Clusters Product under its brand to its customers[.]

(Andersen Aff. ¶ 41.)

Grumhaus acknowledged that Creative Snacks "gave [him] information that falls within [the Supply Agreement's definition of confidential or proprietary information]". (Tr. 53:18-54:12 (referring to § 1.2 of the Supply Agreement).) Although he believes information to be public that Creative Snacks believes to be confidential, he admitted that he does not publish ingredient origins and percentages or cost breakdown for other products that Hello Delicious sells. (Tr. 47:13-48:1, 54:13-21, 56:7-14.)  In fact, within his company[3], cost breakdown is considered confidential information. (Tr. 56:7-17.)  He admitted that knowledge of a competitor's product cost helps a company know a lower price at which to offer the same product. (Tr. 71:15-18.)  Grumhaus also does not publicly publish lead times or detailed profit and margin information. (Tr. 48:2-7, 56:2-6.)  He would not share this information about his other products with Andersen or any competitor, even if offered "millions of dollars for the information". (Tr. 48:8-49:9.)

Creative Snacks contends that it has taken reasonable efforts to maintain the secrecy and confidentiality of this information, including providing the

---

[3] It is unclear to which of Grumhaus's companies he refers.

information to a limited number of employees on a "need to know" basis, limiting access to some information in computer files to certain personnel, maintaining the information mostly within its North Carolina facilities' secured office spaces, and requiring written confidentiality agreements when the need to share information arises, as it did with Grumhaus and Weiss and included in its Supply Agreement with Hello Delicious. (Andersen Aff. ¶ 42.)

On October 5, 2016, pursuant to the terms of the Supply Agreement, Creative Snacks gave written notice to Hello Delicious of termination of the Supply Agreement, effective January 3, 2017. (Id. ¶ 47; Grumhaus Decl. ¶ 46; see also Email from Andersen to Grumhaus (Oct. 5, 2016) [Doc. #16-16]; Tr. 38:8-11 (referring to Prelim. Inj. Ex. 8).) Andersen intended to have Creative Snacks sell the Product directly to Costco once the Supply Agreement terminated and accordingly entered into an agreement with Sage Advisors, LLC for it to serve as Creative Snacks's sales broker. (Andersen Aff. ¶ 53.)

Hello Delicious considered selling and hoped to sell to Costco in the future a product similar to the Toasted Coconut Clusters Product. (Tr. 41:13-21.) In fact, to realize this hope, Grumhaus "sent the product up to a manufacturer [Oak House Baking] [in November 2016] and they developed a product". (Tr. 44:7-11, 46:1-12, 82:12-24.) The product Grumhaus sent to Oak House Baking was "the product that Creative Snacks was providing to Hello Delicious". (Tr. 46:13-16.) Although Grumhaus was aware that the Supply Agreement contained a provision prohibiting Hello Delicious from reverse engineering the Product and understood

7

that Hello Delicious was barred from doing so, the intention was to have Oak House Baking reverse engineer it by "tak[ing] the ingredients, with some instruction, and mak[ing] some new product, similar product." (Tr. 46:17-47:4, 57:18-21, 82:4-7.)

Shortly after the termination of the Supply Agreement became effective, Michael Pierson, a senior vice president of sales with Hello Delicious, sent an email on January 9, 2017, to the Costco candy and snack buyers, as well as Belmont Partners brokers, with the subject "UPDATE: PLEASE READ ITEM #1071880, ORGANIC TOASTED COCONUT CLUSTERS". (Email from Michael Pierson (Jan. 9, 2017) (Ex. A to Third Decl. of Peter D. Grumhaus (June 15, 2017)) (e.g., Prelim. Inj. Ex. 13) [Doc. #39-1]; Tr. 61:20-63:4.)  The item number 1071880 "is the number that Costco used to label the product that Creative Snacks was providing to Hello Delicious and that Hello Delicious was then selling to Costco", and the "organic toasted coconut clusters" was "the name of the product that Costco used to identify the product that Creative Snacks was providing to Hello Delicious to sell to Costco". (Tr. 63:12-21.)

Pierson directed the email recipients to "see [the] attached communication regarding item #1071880, Organic Toasted Coconut Clusters" and to "follow up with [their] Belmont Partners sales representatives who [were] copied on [the] communication" if they had questions. (Email; Tr. 63:22-64:6.)  The attached memorandum also referred to "Item #1071880, Organic Toasted Coconut Clusters", the product that Creative Snacks provided to Hello Delicious to sell to

Costco, as it subject. (Email; Tr. 64:7-16.)  In the memorandum, Pierson explained that Hello Delicious was centralizing its manufacturing of the product, "[a]ll future commitments are available to ship Monday, February 27th 2017, assuming a 4 week lead time", there would be a cost savings of 6.2 percent "[d]ue to the savings associated with a more efficient manufacturing and supply chain", "[a]ll nutritionals, product specs and ingredients will remain the same", and it was "maintaining exclusivity of this item to Costco for the remainder of 2017". (Email.) In other words, "[i]t was the intention at that time" to use the same product "spec" and ingredients. (Tr. 68:12-23.)  Even the picture in the upper right corner of the memorandum was a picture of "the product that Hello Delicious was selling to Costco that Creative Snacks was providing". (Tr. 68:24-69:5.)  "Hello Delicious'[s] intention in sending [the] memorandum was to cause Costco to believe that [it was] going to provide the same product going forward to Costco, but from Hello Delicious and a different manufacturer". (Tr. 69:6-10.)  After receiving Pierson's email and memorandum, Sandy Atilano-Andrade, a candy buyer at Costco, emailed Alicia Bolls, owner of Sage Advisors, LLC, "I thought the organic coconut clusters were going to be done by the company that was making them?  What happened with that." (Andersen Aff. ¶ 54.b. & Ex. 8 (Email from Sandy Atilano to Alicia Bolls (Jan. 9, 2017) [Doc. #7-9]).)  Bolls's response is omitted from the email string, but Atilano-Andrade replies to Bolls, "yes we are hearing different.  It is staying with the same brand, different facility and lower price." (Id. Ex. 8.)

Hello Delicious admittedly did not want to lose Costco's business. (Tr. 69:10.) Grumhaus acknowledged that Pierson's January 9, 2017, memorandum and email was an offer to sell and if Costco had accepted the terms in the memorandum, Hello Delicious would have performed accordingly. (Tr. 66:22-25, 67:5-10.) However, once they received the cease and desist communication, they stopped "everything that [they] had done." (Tr. 66:25-67:2.) They "never ordered packaging", "never had run nutritionals", and "had never produced any product before." (Tr. 67:2-4.)

## II.

"A preliminary injunction is an extraordinary remedy intended to protect the status quo and prevent irreparable harm during the pendency of a lawsuit." Di Biase v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017) (citing Pashby v. Delia, 709 F.3d 307, 319 (4th Cir. 2013)). It can be granted "only if the moving party clearly establishes entitlement to the relief sought." Id. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

Creative Snacks moved for a preliminary injunction based on its claims of breach of confidentiality promises, misappropriation of trade secrets, breach of non-compete covenant, and unfair and deceptive trade practices. (Pl.'s Br. in Supp. of Mot. for Prelim. Inj. [Doc. #7].) At the hearing, though, Creative Snacks

focused on its claims that Defendants violated their respective confidentiality

promises and, in light of new evidence, their promise not to reverse engineer the

Product.

In Defendants' supplemental brief on reverse engineering, they argue that

Creative Snacks only moved for a preliminary injunction on Sections 2.5 and 4.1 of

the Supply Agreement and that neither section addresses reverse engineering,

which is covered in Section 4.3, and that, therefore, "reverse engineering is not at

issue here." (Defs.' Suppl. Br. in Further Opp'n at 3 n.2 [Doc. #50].)  However, it

was not until June 15, 2017, that Defendants provided Creative Snacks with the

Pierson memorandum attached to his January 9, 2017, email. (See Notice of Filing

[Doc. #39]; Third Decl. of Grumhaus ¶ 6 ("To complete the Record . . . , Hello

Delicious is now supplying a complete copy of that email with the attachment.").)

And, it was not until the September 26, 2017, hearing, that Creative Snacks

learned that Grumhaus sent Oak House Baking the Product so that it could make

the same product for Hello Delicious to sell to Costco.  The disclosure of the

memorandum and Grumhaus's related testimony have made reverse engineering an

issue that is properly before the Court.

To determine if Creative Snacks has clearly established a likelihood of

success on the merits of its claims that Defendants breached their contractual

promises, it is necessary to know what law applies to those claims.  The

Confidentiality Agreements and Supply Agreement are governed by North Carolina

law. (Confidentiality Agreements ("This Agreement shall be governed by and

construed under the laws of [sic] State of North Carolina."); Supply Agreement § 6.7 ("This Agreement shall be governed, controlled, and interpreted in accordance with the laws of the State of North Carolina, without regard or resort to its conflict of laws principles.").)  Under North Carolina law, "[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." Poor v. Hill, 530 S.E.2d 838, 843 (N.C. Ct. App. 2000).  A valid contract exists when there has been "a meeting of the minds as to all essential terms of the agreement." Carcano v. JBSS, LLC, 684 S.E.2d 41, 48 (N.C. Ct. App. 2009).

Until the filing of Defendants' supplemental brief on reverse engineering, their only challenge to the validity of the agreements has been Hello Delicious's successful argument that the non-compete provision, or the second sentence, in Section 2.5 of the Supply Agreement is too broad to be enforceable. (See Mem. Op. & Order at 6- (Sept. 12, 2017).)  In a footnote in their supplemental brief on reverse engineering, Defendants proffer, without legal support or further argument, that because "[t]he Product was sent to [them] prior to the Supply Agreement being signed, and was available on Costco's store shelves with its ingredients listed on the Product's packaging", "there is an issue of consideration in relation to the anti-reverse engineering clause in the Agreement." (Defs.' Supp. Br. in Further Opp'n at 6 n.3.)  Nevertheless, in the body of their brief, they argue the merits of Creative Snacks's claim that they reverse engineered the Product.  Defendants' suggestion that "there is an issue of consideration", without more, in a footnote in

a brief filed long after the Court decided their motion to dismiss and the parties' completed initial briefing on Creative Snacks's motion for preliminary injunction, is insufficient to call into question the validity of the Confidentiality Agreements or the Supply Agreement.

There was, however, a question among the parties and the Court as to the meaning of reverse engineering; hence, the parties were permitted to file supplemental briefing on the issue. During their briefing, the Fourth Circuit Court of Appeals issued its opinion in SAS Inst., Inc. v. World Programming Ltd., 874 F.3d 370 (2017), in which it affirmed the district court's determination of the meaning of reverse engineering as that term was used in a contract governed by North Carolina law. The SAS contract included the prohibition that "[c]ustomer may not reverse assemble, reverse engineer, or decompile the Software or otherwise attempt to recreate the Source Code . . . ." Id. at 381. Noting that the meaning of the phrase was "not self-evident" in isolation, "[c]onsistent with North Carolina law, the district court then turned to dictionary definitions and to the contract as a whole to determine the ordinary meaning of the phrase." Id. "According to the Oxford English Dictionary, to reverse engineer is to 'examine (a product) in order to determine its construction, composition, or operation, typically with a view to manufacturing a similar product.'" Id. "A Merriam-Webster definition similarly provides that to reverse engineer is 'to study the parts of (something) to see how it was made and how it works so that you can make something that is like it.'" Id. In SAS, those definitions also "complie[d] with the

13

requirement of North Carolina contract interpretation to give effect to every word of a contract, if possible" because such an understanding of the phrase reverse engineering gave effect to the prohibitions with which it is paired in the contract – reverse assembling and decompiling. Id. The narrower construction advanced by the defendant would render the phrase itself redundant. Id.

The same can be said here where Hello Delicious and those working on its behalf are also prohibited from copying, altering, modifying, disassembling, and decompiling the Product. (See Supply Agreement § 4.3.) Therefore, under the terms of the Supply Agreement, Hello Delicious and those working on its behalf were prohibited from, among other things, examining the Product to determine its construction or composition or how it was made with an eye to manufacturing a similar product.

Creative Snacks has made a clear showing for purposes of its preliminary injunction motion that some combination of Grumhaus, Weiss, and Hello Delicious violated their promises not to disclose and use Creative Snacks's confidential information and not to copy, disassemble, or reverse engineer the Product. Creative Snacks provided information to Defendants that it considered confidential – at the least, the ingredients' countries of origin, the percentage breakdown for the ingredients, and the cost of ingredients, inbound freight, bags, and overhead. While Grumhaus disputed the confidential nature of this information, he admitted that he does not publicly disclose any of this information for the other products Hello Delicious sells, considers it confidential himself, and would not sell this,

among other information, to a competitor for millions of dollars.  Nevertheless, six days after the Supply Agreement terminated, Hello Delicious used at least some of that information to offer for sale to Costco the same product at a lower cost, a cost likely made possible by the knowledge of Creative Snacks's cost of ingredients, inbound freight, bags, and overhead.  Not only is it likely that Hello Delicious used this confidential information in its offer to Costco, but months earlier it had sent the Product to Oak House Baking to be reverse engineered so that it could sell the same product.  Based on this evidence, Creative Snacks is likely to succeed on the merits of its claims that Defendants violated their agreements not to disclose or use Creative Snacks's confidential information and not to reverse engineer the Product.

Having made a clear showing of a likelihood of success on the merits, Creative Snacks must also make a clear showing that it would likely suffer irreparable harm absent a preliminary injunction.  It has done so.  Irreparable harm from a denial of injunctive relief "must be both 'actual' and 'immediate'" and cannot be "remote or speculative".  Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 812 (4th Cir. 1991).  "[I]rreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate" such as "when the failure to grant preliminary relief creates the [likelihood] of permanent loss of customers to a competitor or the loss of goodwill".  Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 22 F.3d 546, 551-52 (4th Cir. 1994), abrogated on other grounds, Winter, 555 U.S. 7; Philips Electrs. N. Am. Corp. v.

Hope, 631 F. Supp. 2d 705, 711-12 (M.D.N.C. 2009) (finding that the plaintiff made a clear showing of actual and immediate harm in the absence of an injunction where the defendant's conduct "undermine[d] [the plaintiff's] relationship with its customers, including its most significant" and "could provide an unfair competitive advantage to . . . a direct competitor"). Loss of proprietary or confidential information may also constitute irreparable harm. See Zahodnick v. Int'l Bus. Machs. Corp., 135 F.3d 911, 915 (4th Cir. 1997) (affirming preliminary injunction where former employee signed nondisclosure agreements according to which he would not disclose confidential information to anyone outside of IBM but, after he left IBM's employment, forwarded confidential materials belonging to IBM to his counsel without IBM's consent); Home Funding Grp., LLC v. Myers, No. 1:06CV1400 (JCC), 2006 WL 6847953, at *2 (E.D. Va. Dec. 14, 2006) (recognizing that once confidential information is disclosed, it is lost forever).

Here, Andersen avers that the damage "to Creative Snacks is not capable of precise estimation". (Andersen Aff. ¶ 62.) On January 9, 2017, Hello Delicious offered for sale to Costco the Product at a lower cost. A Costco candy buyer understood Pierson's email and memorandum to mean that the Product was staying with the same company who had been selling it (Hello Delicious) but that it would be offered at a lower cost. As noted earlier, Hello Delicious was likely able to make this offer – that it would have fulfilled had Costco accepted before Defendants received communications related to the instant litigation – because it had sent the Product to be reverse engineered by another manufacturer months

earlier and was privy to and used Creative Snacks's confidential cost information. Further use by Defendants of its reverse-engineered product and Creative Snacks's confidential information is likely to result in actual, immediate, irreparable harm to Creative Snacks.

The balance of the equities favors Creative Snacks. Enjoining Defendants from using and disclosing Creative Snacks's confidential information and reverse engineering the Product merely requires Defendants to do what they promised. See Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship, 442 F. App'x 776, 785 (4th Cir. Aug. 9, 2011) (unpublished) ("[T]he economic harm that [the defendant] will suffer does not outweigh the harm to [the defendant], given that the injunction is simply enforcing [the defendant's] obligations under the [agreement].") Hello Delicious manufactures, sells, and distributes various food and snack products to major vendors. An injunction does not prohibit Defendants from continuing their sales of other products so long as they have not and do not use Creative Snacks's confidential information to do so or make or sell a product that is the result of having reverse-engineered the Product.

Finally, the public interest is served in enjoining Defendants because the public has an interest in "ensuring that legitimate contracts are enforced." Asheboro Paper & Packaging, Inc. v. Dickinson, 599 F. Supp. 2d 664, 678 (M.D.N.C. 2009).

In sum, at this preliminary injunction stage, Creative Snacks has clearly established that it is likely to succeed on the merits of at least its breach of

confidentiality agreements and agreement not to reverse engineer the Product, it is likely to suffer immediate and actual irreparable harm in the absence of an injunction, the balance of the equities tips in its favor, and an injunction is in the public interest.

At the motion hearing, counsel for Creative Snacks provided a revised proposed preliminary injunction and represented that Creative Snacks is seeking a "fairly limited" injunction. (Tr. 86:20-87:15.) Creative Snacks requested that Defendants not "disclose this information", not "use this information", and not "reverse engineer". (Tr. 87:4-6.) It requested that if Defendants have disclosed any confidential information that they "retrieve it and provide it back to" Creative Snacks. (Tr. 87:6-10.) Finally, Creative Snacks requested that Defendants "preserve" "any evidence concerning the communications that they've had with others about any of the efforts to make what we call the knock-off product." (Tr. 87:10-13.) The Court will grant in part Creative Snacks's requests, as limited by the evidence of what Creative Snacks disclosed to Hello Delicious and the lack of evidence that Defendants have failed to preserve evidence of their communications related to the matters before the Court.

III.

Rule 65(c) of the Federal Rules of Civil Procedure provides that a court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." A court

usually will fix security in an amount that covers the potential incidental and consequential costs as well as either the losses the unjustly enjoined or restrained party will suffer during the period the party is prohibited from engaging in certain activities or the complainant's unjust enrichment caused by his adversary being improperly enjoined or restrained.

11A Charles A. Wright, Federal Practice and Procedure § 2954 (3d ed. 2013) (Apr. 2017 update).

"The burden of establishing the bond amount rests with the party to be restrained, who is in the best position to determine the harm it will suffer from a wrongful restraint." Lab. Corp. of Am. Holdings v. Kearns, 84 F. Supp. 3d 447, 465 (M.D.N.C. 2015). The court "retains the discretion to set the bond amount as it sees fit or waive the security requirement." Pashby, 709 F.3d at 332 (citing Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411, 421 (4th Cir. 1999)). "However, the district court must expressly address the issue of security before allowing any waiver and cannot 'disregard the bond requirement altogether.'" Id. (quoting Hoechst Diafoil Co., 174 F.3d at 421).

Defendants have made no argument nor pointed to any record evidence in support of an appropriate bond. The only argument either party has made on the issue is Creative Snacks's proposal in its motion for "a minimal bond" because, according to Creative Snacks, "the showings . . . demonstrate a strong likelihood of success". (Mot. for Prelim. Inj. ¶ 6 (citing Hoeschst Diafoil Co., 174 F.3d at 421 n.3).)

Because there is no evidence that Defendants have lost business as a result of this litigation or that they would as a result of this narrower preliminary injunction, nor have they suggested any other harm, it is determined that security in the amount of $5,000.00 satisfies the concerns of Rule 65(c).

IV.

For the reasons stated, IT IS HEREBY OREDERED that Plaintiff Creative Snacks Co., LLC's Motion for Leave to File Supplemental Brief on Reverse Engineering [Doc. #53] IS GRANTED.  IT IS FURTHER ORDERED that Creative Snacks Co., LLC's Motion for Preliminary Injunction [Doc. #6] is GRANTED IN PART AND DENIED IN PART, and that Defendants Hello Delicious Brands LLC, Peter D. Grumhaus, Jr., and Douglas M. Weiss be PRELIMINARILY ENJOINED as follows:

1. Defendants and all persons and entities in active concert or participation with them (including any of the Belmont Companies) must return to Creative Snacks all confidential business information provided to them by Creative Snacks which information has not been provided to the public by Creative Snacks.  Such business information (collectively referred to as "Confidential Information") includes:

    a.  The ingredient specification for the Product;

    b.  The origins (sources) of the ingredients of the Product;

c. The cost breakdown as to the manufacture of the Product, including ingredient costs, packaging costs, freight costs, and overhead costs; and

d. Profit margin information as to the Product provided by Creative Snacks.

2. Defendants and all persons and entities in active concert or participation with them (including any of the Belmont Companies) shall not use any of the Confidential Information except as authorized in writing by Creative Snacks;

3. Defendants and all persons and entities in active concert or participation with them (including any of the Belmont Companies) are prohibited from disclosing to anyone Creative Snacks's Confidential Information;

4. Defendants shall immediately provide a copy of the Court's injunction order to all persons to whom and all entities to which Defendants and all persons and entities in active concert or participation with them (including any of the Belmont Companies) communicated any of the Confidential Information;

5. Defendants shall immediately inform all persons to whom and all entities to which Defendants and all persons and entities in active concert or participation with them (including any of the Belmont Companies) communicated any of the Confidential Information to immediately return all such Confidential Information, if in writing, to Defendants and

Defendants shall return the same to Creative Snacks, and to instruct them not to use the information for any purpose;

6. Defendants shall immediately inform all persons to whom and all entities to which Defendants and all persons and entities in active concert or participation with them (including any of the Belmont Companies) communicated directions or requests to reverse engineer the Product or to copy the Product using Confidential Information to cease all such efforts; and

7. Defendants and all persons and entities in active concert or participation with them (including any of the Belmont Companies) are prohibited from altering, modifying, disassembling, reverse engineering, or decompiling the Product unless expressly permitted in writing by Creative Snacks.

IT IS FURTHER ORDERED that, pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, this Preliminary Injunction shall only become effective when Plaintiff Creative Snacks Co., LLC gives security by executing a bond in the amount of $5,000.00 or by depositing cash in said amount with the Clerk of Court for the United States District Court for the Middle District of North Carolina.

This the 30th day of March, 2018.


/s/ N. Carlton Tilley, Jr.
Senior United States District Judge